UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARTIN GREER,

     Plaintiff,

v.                                    CASE NO: 8:06-cv-213-T-23MSS

HILLSBOROUGH COUNTY SHERIFF'S
OFFICE, et al.,

     Defendants.

_____/

## **<u>ORDER</u>**

Proceeding *pro se*, Martin Greer ("Greer") sues (Doc. 1) the Hillsborough County
Sheriff's Department ("Sheriff's Department"), David Gee ("Sheriff"), and Deputies M.
Damico, R. Workman, and J. Collins ("the individual defendants") for false arrest,
excessive force, and deliberate indifference in violation of civil rights enforceable under
42 U.S.C. § 1983 ("Section 1983").  The defendants move (Doc. 5) to dismiss the
complaint for failure to state a claim.[1]

Greer alleges that, when arresting him pursuant to Florida Statute 394.463 ("the
Baker Act"), the individual defendants violated his constitutional protection against
unreasonable seizure, excessive force, and deliberate indifference.  According to the

_____

[1]This is Greer's second attempt to state a cognizable claim under Section 1983.  An earlier
complaint, which alleged nearly identical facts, was dismissed for failure to state a claim in <u>Greer v.
Hillsborough County Sheriff's Department</u>, Case No. 8:04-cv-2034-T-23MSS.

complaint (Doc. 1), Greer's arrest occurred during a visit to his wife's therapist, Roene

Zohler Hewes ("the therapist"), who interpreted Greer's statements as suicidal and

contacted the Sheriff's Department to request Greer's involuntary mental health

evaluation under the Baker Act.  The responding deputies attempted to transport Greer

to a psychiatric facility for evaluation, but Greer refused.  Greer's complaint alleges that,

during Greer's attempt to flee the therapist's office and avoid the deputies, the individual

defendants stood in the doorway and blocked his exit.  Responding to Greer's persistent

recalcitrance, Deputy Damico subdued Greer with a "taser gun" and seated him in a

police cruiser, where Greer allegedly remained for two hours before delivery to the

psychiatric facility.  Greer's complaint (quite liberally construed) alleges claims for false

arrest, excessive force, and deliberate indifference, each in violation of his constitutional

rights.[2]

False Arrest

Greer does not challenge the constitutionality of any portion of the Baker Act but

complains (Doc. 1) that his arrest pursuant to the Baker Act constituted a false arrest in

---

[2]The complaint alleges that the Sheriff's Department and the Sheriff implemented
unconstitutional policies.  However, the Sheriff is ultimately responsible for establishing the policies of
the Sheriff's Department.  Because the complaint lodges no distinct allegations against the Sheriff's
Department, the plaintiff's addition of the Sheriff's Department is duplicative.  Accordingly, all claims
against the Sheriff's Department are **DISMISSED** and the Sheriff's Department is **DISMISSED** as a
party to this case.  Kentucky v. Graham, 473 U.S. 159 (1985) (holding that an official capacity suit
brought against an individual is in effect a suit against the agency).

violation of his constitutional rights.[3]  Because Section 1983 provides no substantive

right but provides only "'a method for vindicating federal rights elsewhere conferred,'" a

federal claim for false arrest under Section 1983 requires the violation of a specific

federal right.  Albright v. Oliver, 510 U.S. 266, 269 (1994); Baker v. McCollan, 443 U.S.

137, 140 (1979).  The Fourth Amendment's protection against unreasonable seizure

includes protection against arrest without probable cause.  Crosby v. Monroe County,

394 F.3d 1328, 1332 (11th Cir. 2004).

In response to Greer's false arrest claim, the individual defendants assert the

defense of qualified immunity (Doc. 5).  Qualified immunity permits a government official

to perform a discretionary duty "without the fear of personal liability or harassing

litigation" and protects from suit "all but the plainly incompetent."  Gonzalez v. Reno,

325 F.3d 1228, 1233 (11th Cir. 2003).  Because qualified immunity bestows "an

entitlement not to stand trial or face the other burdens of litigation," the issue of qualified

immunity requires resolution "at the earliest possible stage in litigation."  Gonzalez v.

Reno, 325 F.3d 1228, 1233 (11th Cir. 2003).[4]

---

[3]To the extent Greer attempts to assert a federal claim pursuant to Section 1983 for a violation of the Baker Act, the complaint fails to state a claim.  A plaintiff "may not maintain a Section 1983 claim based on a violation of Florida's Baker Act, as the Baker Act is not a federal constitution or law of the United States."  Constantino v. Madden, No. 8:02-cv-1527-T-27TGW, 2003 WL 22025477, *4 (M.D. Fla Apr. 1, 2003).

[4]Qualified immunity protects only those government officials acting within the scope of their discretionary authority when the allegedly wrongful acts occurred.  Kesinger v. Herrington, 381 F.3d 1243, 1248 (11th Cir. 2004)(citing Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002)).  The complaint alleges and no party disputes that the individual defendants were acting within the scope of their discretionary authority as deputies of the Sheriff's Department.

In evaluating a qualified immunity defense, Saucier v. Katz requires a two-part inquiry.  First, a court must ascertain whether the plaintiff's allegations, if accepted as true, establish a specific constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001); Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).  Second, if the plaintiff's version of the facts establish a constitutional violation, a court must then determine whether the violation abridged a constitutional right "clearly established" by then existing legal precedent.  Saucier, 533 U.S. at 201; Ferraro, 284 F.3d at 1194.

Consistent with Saucier v. Katz, the court first analyzes whether the individual defendants violated Greer's constitutional rights.  So long as the individual defendants had "arguable probable cause" for Greer's arrest, no constitutional violation occurred.  Scarborough v. Myles, 245 F.3d 1299, 1302 (11th Cir. 2001); Jones v. Cannon, 174 F.3d 1271, 1283 n.3 (11th Cir. 1999) ("Arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry.").  Arguable probable cause exists if, considering the accompanying circumstances, an arresting officer reasonably perceived probable cause to support the arrest.  Crosby v. Monroe, 394 F.3d 1328, 1332-33 (11th Cir. 2004); Durruthy v. Pastor, 351 F.3d 1080, 1089 (11th Cir. 2003) ("Arguable probable cause exists when an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed.") Thus, whether Greer's seizure was lawful depends on whether the deputies reasonably perceived probable cause to subject Greer to an involuntary examination under the

Baker Act.  See LeSavage v. White, 755 F.2d 814, 821 (11th Cir. 1985); Cochrane v.

Harvey, No. 4:04CV475-RH/WCS, 2005 WL 2176874, *4 (N.D. Fla. Sept. 1, 2005).

Section 394.463(1) of the Baker Act allows a law enforcement officer to arrest a

person for an involuntary mental health examination if "there is reason to believe that

the person has a mental illness and because of his or her mental illness . . . [t]he person

has refused voluntary examination after conscientious explanation and disclosure of the

purpose of the examination." FLA. STAT. § 394.463(1)(a) (2002).  Likewise, Section

394.463(2)(a) of the Baker Act provides that if, upon examining a person within the

preceding forty-eight hours, a mental health professional certifies that the person meets

the criteria for involuntary examination, "a law enforcement officer shall take the person

. . . into custody and deliver him or her to the nearest receiving facility for involuntary

examination." FLA. STAT. § 394.463(2)(a) (2002).

In describing the events preceding Greer's arrest, the complaint alleges that the

deputies responded to a request by Greer's wife's therapist, who interpreted Greer's

statements as suicidal and contacted the Sheriff's Department to request Greer's

involuntary mental health evaluation under the Baker Act (Doc. 1).  Asked by the

therapist whether he contemplated suicide, Greer answered "Suicide?  The only way I

would ever kill myself would be by starvation but chicken wings makes me hungry you

idiot" (Doc. 1 at 2).  Greer alleges that he accused the therapist of having "Ed Zachary"

disease.  Asked to explain, Greer answered "You sound Ed Zachary like a moron and

your rear cheeks look Ed Zachary like your front" (Doc. 1 at 3).  Advised by the therapist

that she was calling the police, Greer stated that he "would not go with the police" (Doc. 1 at 3).  Asked by the therapist whether he intended "suicide by police," Greer answered "Yeah, I'll do that you idiot" (Doc. 3 at 7).  Greer admits to repeating these "jokes" to the deputies upon their arrival (Doc. 3 at 7).

Under the circumstances, a reasonable deputy could have perceived probable cause to assume custody of Greer pursuant to the Baker Act.  Despite Greer's later insistence that his suicidal iteration was a "joke" (Doc. 7), an attending officer reasonably could construe Greer's nonsensical, incoherent, and ominous remarks (which Greer admits) as requiring protective custody under the Baker Act.  "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity."  Hunter v. Bryant, 502 U.S. 224, 227 (1991).

In any event, nothing in the complaint supports the conclusion that the deputies acted in bad faith in implementing the Baker Act's provision that, upon a mental health professional's certification that a person meets the criteria for involuntary examination, "a law enforcement officer shall take the person . . . into custody and deliver him or her to the nearest receiving facility for involuntary examination."  FLA. STAT. § 394.463(2)(a) (2002).  Indeed, qualified immunity especially protects government officers serving the public interest by confidently performing discretionary duties essential to the public health and safety.  Crosby v. Monroe, 394 F.3d 1328, 1332-33 (11th Cir. 2004); Cochrane v. Harvey, No. 4:04CV475-RH/WCS, 2005 WL 2176874, *4 (N.D. Fla.

Sept. 1, 2005) ("A deputy in so murky a setting ought not be required to act at his or her personal financial peril.").

Under the attendant circumstances, the individual defendants reasonably perceived probable cause for Greer's involuntary mental health examination pursuant to the Baker Act.  Because probable cause existed for Greer's arrest, no constitutional deprivation occurred.  Scarbrough v. Myles, 245 F.3d 1299, 1302 (11th Cir. 2001).  Accordingly, Greer's false arrest claim against the individual defendants is **DISMISSED WITH PREJUDICE**.

Respondeat superior imputes to a county sheriff no liability under Section 1983 for injury caused by the sheriff's employees.  Monell v. Department of Social Services, 436 U.S. 658, 691 (1978) ("a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents"); see McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004); Quinn v. Monroe County, 330 F.3d 1320, 1325 (11th Cir. 2003).  To assert against the Sheriff a claim for false arrest under Section 1983, Greer must allege a constitutional violation caused by enforcement of a policy or custom of the Sheriff.  McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing Canton v. Harris, 489 U.S. 378 (1989)).  Because the deputies had probable cause for Greer's arrest under the Baker Act, no constitutional deprivation occurred and the Sheriff incurs

no liability.  City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).  Accordingly,

Greer's false arrest claim against the Sheriff is **DISMISSED WITH PREJUDICE**.[5]

Excessive Force

Ordinarily, a claim for a false arrest subsumes a claim for excessive force

because the "damages for false arrest include damages for use of force to effect the

arrest."  Jackson v. Sauls, 206 F.3d 1156, 1171 (11th Cir. 2000).  However, the

dismissal of Greer's claim for false arrest leaves for discrete evaluation the sufficiency

of Greer's remaining claim for excessive force.  Jackson, 206 F.3d at 1171.

---

[5]Even assuming a constitutional violation, Greer fails to plead facts sufficient to demonstrate that a policy or custom of the Sheriff caused the deputies' false arrest of Greer.  A policy is "a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality."  Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997).  A custom is "a practice that is so settled and permanent that it takes on the force of law."  Sewell, 117 F.3d at 489.  Absent some policy or custom that caused Greer's allegedly illegal seizure, the Sheriff incurs no liability for Greer's seizure (even if unconstitutional).  Cochrane v. Harvey, No. 4:04CV475-RH/WCS, 2005 WL 2176874, *4 (N.D. Fla. Sept. 1, 2005) (rejecting a claim against a county sheriff who seized the plaintiff pursuant to the Baker Act because the plaintiff failed to allege a policy or custom resulting in a constitutional violation); see Monell v. Department of Social Services, 436 U.S. 658, 694 (1978) (holding that a government entity is responsible under Section 1983 only "when execution of a government's policy or custom . . . inflicts the injury").

Greer alleges in a conclusory manner that virtually every action taken by the deputies was pursuant to the Sheriff's "policy and procedure" but fails to identify any departmental policy or custom that caused Greer's allegedly false arrest.  Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) ("In examining the factual allegations in a complaint, we must keep in mind the heightened pleading requirements for civil rights cases . . . . [M]ore than mere conclusory notice pleading is required.");  Davis v. DeKalb County School Dist., 233 F.3d 1367, 1375 (11th Cir. 2000) (holding that a plaintiff must identify the policy or custom that caused the injury).  In his response to the motion to dismiss, Greer provides a copy of various Baker Act policies and procedures promulgated by the Pasco, Citrus, and Pinellas county sheriff's offices (Doc. 7).  None of these documents, however, informs whether the Sheriff in this case maintained some policy or custom that caused or required Greer's allegedly false arrest.  Because the complaint identifies no policy or custom, the Sheriff incurs no liability for false arrest.  Monell v. Department of Social Services, 436 U.S. 658, 694 (1978).

Greer claims that Deputy Damico ("Damico") used excessive force by deploying a taser to effect Greer's arrest (Doc. 1) and that Deputy Workman ("Workman") used excessive force by handcuffing Greer's hands behind his back while Greer was unconscious (Doc. 1).  Greer insists that the employed force was excessive because his hands were plainly visible to the officers and he threatened no one with violence (Doc. 1).  In response, the individual defendants argue that, assessed under the objective reasonableness standard, their use of the taser and handcuffs to effectuate Greer's arrest was reasonable under the circumstances (Doc. 5).

A federal claim for excessive force under Section 1983 requires the violation of a specific federal right.  Albright v. Oliver, 510 U.S. 266, 269 (1994).  The Fourth Amendment's prohibition of unreasonable seizures includes the prohibition of excessive force during an arrest.  Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002). Consistent with the Fourth Amendment, law enforcement officers are entitled to use reasonable force to execute a lawful arrest.  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham v. Connor, 490 U.S. 386, 396-97 (1989) (holding that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it"); Rodriguez v. Farrell, 280 F.3d 1341, 1351 (11th Cir. 2002) (observing that "the typical arrest involves some force and injury").

- 9 -

Graham v. Connor requires evaluating an excessive force claim under the "objective reasonableness" standard of the Fourth Amendment.  Graham, 490 U.S. at 395.  This "calculus of reasonableness" must "embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation."  Graham, 490 U.S. at 396-97.  A determination (under Graham) of whether an officer's force was reasonable requires examination of (1) the need for the application of force, (2) the relationship between the need for force and the amount of force deployed, and (3) the extent of any injury inflicted by the force.  Lee v. Ferraro, 284 F.3d 1188, 1198 (11th Cir. 2002).

The complaint (Doc. 1) alleges that Greer refused the deputies' repeated requests to escort him peaceably to a mental health facility for examination and that the officers prevented Greer's attempt to flee the therapist's office.  Finally, the complaint alleges that, after receiving a warning from the deputies about the prospective use of the taser, Greer defiantly locked his arms around the armrest of his chair and refused to comply (Doc. 1 at ¶ 13).[6]  Accepted as true, these allegations tend to demonstrate the need for the application of force.

---

[6]Greer's amended complaint conspicuously omits several facts contained in Greer's original complaint (filed in Greer v. Hillsborough County Sheriff's Department, Case No. 8:04-cv-2034-T-23MSS).  Perhaps the most vivid omission is the former allegation that "[a]fter the therapist became enraged at me for embarrassing and humiliating her with sarcasm, she threatened to call the police. *I said that they would have to shoot me to get me to go with them*, believing that would discourage her from involving the police" (Doc. 1 at ¶ 6)(emphasis added).

However, the complaint also alleges that "[t]he taser was then deployed *several times* against plaintiff by Deputy Damico stopping [the plaintiff's] heart and knocking him unconscious" (Doc. 1 at 4)(emphasis added).  Greer claims that, upon regaining consciousness and discovering that he was handcuffed, he "forced blood into his head by pushing hard with his abdominal muscles . . .coughed hard to restart his heart's rhythm and took deep breaths to get more oxygen in his system" (Doc. 1 at 4).  As a result of the incident, Greer claims that he suffers post-traumatic stress disorder, which prevents his going outside or driving alone (Doc. 1 at 6).  Greer also claims that he "relives this experience every night which prevents him from sleeping well without medication to prevent the nightmares that keep him awake" (Doc. 1 at 6).  Finally, Greer claims that, as a result of the handcuffs, he suffered "skin damage" on his left hand and is forced to wear his watch on the palm side of his wrist (Doc. 1 at 6).  Taken as true and viewed most favorably to Greer, these allegations suggest the deputies applied a disproportionate amount of force during Greer's arrest.

Accepting the allegations in Greer's complaint as true, the merits of Greer's claim for excessive force are not appropriately addressed (without the benefit of discovery) by a motion to dismiss.  Accordingly, the defendants' motion to dismiss Greer's excessive force claim is **DENIED**.

<u>Deliberate Indifference</u>

Greer's claim for deliberate indifference under Section 1983 requires the violation of a specific federal right.  <u>Albright v. Oliver</u>, 510 U.S. 266, 269 (1994).  The Fourteenth

Amendment's Due Process Clause, not the Eighth Amendment's Cruel and Unusual

Punishment Clause governs a claim alleging the mistreatment of an arrestee or a

pretrial detainee.  Cottrell v. Caldwell, 85 F.3d 1480, 14980 (11th Cir. 1996).

Nevertheless, the Eighth and Fourteenth Amendments provide the same standard for

providing basic human needs to those in custody.  Marsh v. Butler County, Ala., 268

F.3d 1014, 1024 n.5 (11th Cir. 2001)(en banc).

To demonstrate a violation of his constitutional rights, Greer must produce

"sufficient evidence" of "(1) a substantial risk of serious harm; (2) the defendants'

deliberate indifference to that risk; and (3) causation."  Hale v. Tallapoosa County, 50

F.3d 1579, 1582 (11th Cir. 1995).  A defendant is deliberately indifferent if he is aware

of but disregards an "excessive risk" to "health or safety."  Farmer v. Brennan, 511 U.S.

825, 837 (1994).  A defendant "must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference."  Farmer, 511 U.S. at 837.

Greer alleges that, during his confinement in the backseat of the patrol car, his

"hands became numb and his knee jammed against the front seat [and] began to ache

severely.  His body became soaking wet from the heat in the locked car with rolled up

windows in the sun" (Doc. 1 at 4-7).  Greer also claims that his repeated requests for

"water, shade, toilet use, and pain relief" were refused by the individual defendants

(Doc. 1 at 5).  Greer alleges that he "remained quietly in the car in severe pain and

distress both physical and emotional for about two hours which constitutes a form of

torture" (Doc. 1 at 5).  Greer also claims that, en route to the hospital, Deputy Workman "again refused to loosen the handcuffs and change Plaintiffs position in the car to relieve his knee pain and restore feeling into his hands" (Doc. 1 at 5).  Finally, Greer alleges that "Deputy Workman told the [hospital] staff to assist him in restraining Plaintiff in a dark locked windowless room by tying his arms and legs to a small cot on the floor and again denying Plaintiff water and toilet use" (Doc. 1 at 5).

Accepting the allegations in Greer's complaint as true, the merits of Greer's claim for deliberate indifference are not appropriately addressed (without the benefit of discovery) by a motion to dismiss.  Accordingly, the defendants' motion to dismiss Greer's deliberate indifference claim is **DENIED**.

Conclusion

The defendants' motion to dismiss the complaint (Doc. 5) is **GRANTED IN PART** and **DENIED IN PART** consistent with this order.

ORDERED in Tampa, Florida, on August 31, 2006.

**STEVEN D. MERRYDAY**
**UNITED STATES DISTRICT JUDGE**

- 13 -